**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SIGNATURE PHARMACY, INC.,
ROBERT STAN LOOMIS, KENNETH
MICHAEL LOOMIS, NAOMI LOOMIS,
KIRK CALVERT and TONY
PALLADINO,

                **Plaintiffs,**

-vs-                                          Case No. 6:08-cv-1853-Orl-31GJK

P. DAVID SOARES, CHRISTOPHER B.
BAYNES, ALBANY COUNTY DISTRICT
ATTORNEY'S OFFICE, MARK HASKINS,
CITY OF ORLANDO, FLORIDA and
ALEX WRIGHT,

                  **Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 127) filed by the City of Orlando ("Orlando" or the "City"), the response (Doc. 200) filed by the Plaintiffs, and the reply (Doc. 214) filed by Orlando.

**I.    Background**

The plaintiffs in this Section 1983 action include a corporation (Signature Pharmacy, Inc.) that owned a pharmacy with two locations, both in Central Florida; a group of individuals – Robert Stan Loomis ("Stan Loomis"), Kenneth Michael Loomis ("Michael Loomis"), and Naomi Loomis – who owned the corporation; and two individuals – Kirk Calvert ("Calvert") and Tony Palladino ("Palladino") – who were employed by the pharmacy. The Plaintiffs were the subject of an

investigation into their allegedly unlawful sale of controlled substances, including anabolic steroids and human growth hormone ("HGH").

The investigation was carried out by law enforcement agencies in Florida and New York, including the Albany County District Attorney's Office (the "Albany County D.A.'s Office") and the Metropolitan Bureau of Investigation ("MBI"), a Florida-based, multi-agency task force. Most of the individual defendants were associated with the investigation in New York: P. David Soares ("Soares") was the District Attorney for Albany County; Christopher P. Baynes ("Baynes") was an Assistant District Attorney for Albany County; and Mark Haskins ("Haskins") was an investigator with New York's Bureau of Narcotics Enforcement. The instant motion, however, primarily concerns the activities of Mark Wright ("Wright"), who was employed by the Orlando Police Department ("OPD") and assigned to the MBI at all times pertinent to this case. While assigned to MBI, Wright was supervised by Carl Mezger ("Mezger"), who was also an employee of the City, but who is not a defendant in this matter.

The investigation included a wiretap of the pharmacy's phones and, subsequently, the execution of search warrants at both pharmacy locations. Wright primarily authored the affidavits used to secure judicial approval of the applications for the wiretaps and the search warrants. On the day the search warrants were executed – February 27, 2007 – law enforcement officers seized substantial amounts of pharmacy inventory, equipment, and patient records. They also arrested the individual Plaintiffs, other than Palladino, purportedly on the basis of warrants from New York. Representatives of a number of media outlets, who were at the locations where the search warrants were executed and the arrests occurred, photographed the Plaintiffs who had been arrested as they were led from the pharmacy buildings to the police cars for transport to the jail.

## II. Legal Standards

### A. Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B. Municipal Liability under Section 1983

Title 42 U.S.C. § 1983 provides, in relevant part, that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress.

Municipalities are "persons" for purposes of Section 1983. *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611 (1978). However, a municipality may not be held liable under Section 1983 solely because it employs a tortfeasor. *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1387, 137 L.Ed.2d 626. Liability attaches under Section 1983 only to those actors who violate a plaintiff's rights. *Monell* at 690-91, 98 S.Ct. at 2036. Municipalities can only be held liable under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91, 98 S.Ct. at 2035-36. In *City of Canton v. Harris*, the Supreme Court held that a municipality's failure to train its employees can result in liability under Section 1983, but only where that failure to train "evidences a deliberate indifference to the rights of its inhabitants" and "reflects a deliberate and conscious choice by a municipality – a "policy' as defined by our prior cases." *City of Canton, Ohio v. Harris*, 489 U.S.. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

**III. Analysis**[1]

The Plaintiffs contend that their civil rights were violated as a result of, among other things, Wright's actions during the investigation, search, and arrests. In Count VII of the Amended Complaint, the Plaintiffs assert a Section 1983 claim against the City based on Wright's actions. The City argues first that the Plaintiffs cannot show that Wright deprived them, or caused them to be deprived, of any rights, privileges, or immunities secured by the Constitution and laws, as required to establish liability under 42 U.S.C. § 1983. The City further argues that, even assuming the Plaintiffs could make such a showing, they have not produced any evidence from which a reasonable jury could find that Orlando itself violated the Plaintiffs' rights, as required to impose liability on a municipality under Section 1983. The Plaintiffs respond to these arguments on several different fronts, each of which is addressed in turn below.

**A. Genuine issues of material fact**

The Plaintiffs first point to six subject areas in which, they contend, issues of material fact exist that preclude the entry of summary judgment in favor of Orlando.

- The individuals who were arrested – Stan Loomis, Mike Loomis, Naomi Loomis, and Calvert – dispute that they were arrested pursuant to valid New York warrants. They contend that the Defendants have produced no record evidence that such warrants existed when the arrests were made, and that the record evidence actually

---

[1] In addition to its effort to obtain summary judgment on the Section 1983 claims against it, the City seeks judgment as to the claims of Stan Loomis and Palladino because they invoked the Fifth Amendment and refused to answer any questions at their depositions. (Doc. 127 at 17-19). This Court has already rejected (Doc. 140) similar motions (Doc. 116, 117) filed by Haskins and sees no reason to revisit the issue.

contradicts the City's assertion that the existence of the warrants was verified by OPD's teletype system prior to the arrests.

- The Plaintiffs argue that the affidavits in support of the wiretap application, which were primarily authored by Wright and reviewed my Mezger, were rife with misstatements and misrepresentations and therefore did not establish probable cause for the wiretaps.

- Although the City contends it played only a minor part in what the Plaintiffs call the "negative media campaign" surrounding the execution of the search warrants, the Plaintiffs contend the City played a much greater role. In addition to what the City admits – essentially, that its employees observed the presence of some media at the pharmacy sites, and issued a single press release – the Plaintiffs contend that there is evidence that representatives of two media outlets attended a New York meeting between Wright and the Albany-area defendants, and therefore Orlando "anticipated the media's involvement at" the subsequent raids. In addition, Soares and Baynes, who were present at meetings with media outlets, were allowed inside one of the pharmacy locations during the raid. The Plaintiffs also contend that Mezger (1) invited Soares to give a press conference on Signature's property during the raids; (2) informed the media during the raids that the fact that the Plaintiffs contacted attorneys suggested that they were not truly innocent; and (3) failed to reprimand Wright for making statements to the media. Finally, the Plaintiffs argue that the arresting officers arranged for them to be paraded in front of the media

representatives for photographing as they left the pharmacy building to be booked – a display commonly referred to as a "perp walk".

- As with the affidavits in support of the wiretap, the Plaintiffs contend that the affidavits in support of the search warrants, which were primarily authored by Wright, would not have established probable cause were it not for the misstatements and misrepresentations they contained.[2]

- The Plaintiffs argue that the property seized on February 27, 2007 exceeded the scope of the search warrants, in that items were seized that were not identified in the warrants and had no possible evidentiary value.

- Finally, the Plaintiffs contend that the majority of the property seized from the pharmacy locations has not been returned by Wright, even though the state court judge who signed the search warrants has ordered that it be returned.

Most if not all of these facts are disputed by the Defendats. But even assuming that the evidence supports the facts as alleged by the Plaintiffs, they are not enough to avoid summary judgment, for a number of reasons. First, several of the allegations do not rise to the level of a deprivation of a right, privilege or immunity secured by the Constitution or laws. For example, without more, it is not a violation of Section 1983 to "anticipate the media's involvement" during a raid, to invite someone from another law enforcement agency to give a press conference, or to

---

[2]In their initial response to the City's motion, the Plaintiffs attacked the search warrant applications as lacking in probable cause because the affidavits supporting them had not been produced. After the affidavits were produced, the Plaintiffs attacked them on the basis of their alleged misrepresentations. Although these later allegations were not contained in the Plaintiffs' initial response, the Court has considered them in resolving this motion.

permit the media to photograph arrestees on the way to their booking. More importantly, the Plaintiffs have failed to connect the dots and tie these allegedly disputed issues of material fact to the City of Orlando, as required to establish municipal liability. The Plaintiffs have not pointed to any evidence that the City had an official policy of, for example, obtaining warrants by way of improper affidavits, or that the practice of failing to return seized property was so widespread as to constitute a custom of the OPD. Thus, although the facts put at issue by the Plaintiffs here may be disputed, the Plaintiffs have failed to show that they are material to the issue of the City's liability.

  **B.** **Municipal Liability**

After raising the purported issues of fact described above, the Plaintiffs do make an effort to establish the City's liability. However, rather than incorporate this effort into the discussion regarding the issues of fact, the Plaintiffs make the municipal liability section separate. For whatever reason, the result is that a number of the bases that the Plaintiffs attempt to use to establish Orlando's liability have no connection to the allegedly disputed issues of material fact set forth in the preceding section, and vice versa.

In an attempt to hold the City liable for allegedly providing inadequate training to its employees, the Plaintiffs assert that the City has failed to provide any evidence that Wright or Mezger received any training or copies of OPD written policies designed to protect citizens' rights. But to establish failure-to-train liability under *City of Canton*, "*a plaintiff* must establish two things: first, that the city in fact inadequately trained its employees in the lawful execution of their duties . . . and second, that this failure to train was actually a city policy." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1555 (11th Cir. 1989) (emphasis added). Clearly, under *City of Canton*, the Plaintiffs bear the burden of establishing the lack of training and the existence of a

policy. The Plaintiffs' argument on this point is an improper attempt to shift the burden to the City, to force it to establish that the training occurred or that the failure to train was not actually a municipal policy.

In addition, the Plaintiffs only point to one specific instance of training that Wright allegedly did not receive – OPD Training Bulletin 1308.0. That bulletin, in the Plaintiffs' words, was "related to consulting legal counsel before allowing the media or other third parties (such as Baynes and Soares) to be present while a search warrant is executed". (Doc. 200 at 13). But the Plaintiffs have not produced any evidence that the mere presence of the media (or Baynes and Soares) while the search warrants were executed caused any violation, or that a consultation by Wright with legal counsel before the execution of the warrants would or could have prevented such a violation. It is not enough for the Plaintiffs to simply claim that there were some areas in which the City failed to provide training. To prevail on a failure-to-train claim, the Plaintiffs must show that the City's failure to provide training *resulted in* the deprivation they suffered. *City of Canton*, 489 U.S. at 392, 109 S.Ct. at 1206. Even then, the City can only be held liable where the failure to train reflected deliberate indifference to the constitutional rights of its inhabitants. *Id*.

The Plaintiffs also assert several bases for holding the City liable on the grounds of improper supervision, but these arguments suffer the same flaw as their failure-to-train arguments. The Plaintiffs argue that there is evidence that Wright violated one OPD policy by failing to properly prepare written reports of his investigation and another by releasing information to the media without the approval of his superior. In both instances, according to the Plaintiffs, Mezger failed to properly discipline Wright after this occurred. (Doc. 200 at 14). Assuming a jury were to agree with the Plaintiffs' interpretation of the evidence, it would not suffice to establish liability on

the part of the City. The Plaintiffs have not even alleged that their rights were harmed by a failure to prepare reports or to solicit permission from superiors before talking to the media, and thus any alleged failure to supervise by Mezger in these areas could not have resulted in the deprivations they allegedly suffered.

The Plaintiffs also seek to hold the City liable under Section 1983 on the basis of allegedly "continuous violations of [City] policies and procedures." (Doc. 200 at 16). As examples of such violations, the Plaintiffs point to: unidentified comments by Wright and a press release from Mezger that made the Plaintiffs appeared to be guilty, thereby allegedly violating their right to a fair trial, in violation of OPD Policy 2304.1; violations, by way of the same statements, of OPD Policy 2304.1-6, which provides that only the Chief of Police or his/her designee can authorize a news release; and the so-called perp walk, allegedly a violation of OPD Policy 2304.1-7, which states that officers "shall not deliberately pose any person for photographing or filming by representatives of the news media."

The Plaintiffs' contentions on these points are, to put it mildly, a stretch. The Plaintiffs did not suffer any sort of deprivation because the Chief of Police did not authorize the comments from Wright or Mezger's press release, and it is hard to imagine how their statements – in essence, that it was their opinion that the individuals who were arrested were actually guilty – could have deprived the Plaintiffs of their right to a fair trial. And leading a person past representatives of the news media to a police car is a far cry from "posing" that person for filming, which is what the policy actually forbids. But even assuming that these actions were, in fact, violations of OPD policy and resulted in deprivations for purposes of Section 1983, the Plaintiffs have produced no evidence from which a reasonable jury could conclude that Orlando knew or should have known

that such actions were occurring – *i.e.,* that the City had an unofficial custom of permitting such behavior, or failing to train or supervise its employees so as to prevent it – much less that it had an official policy of doing so.

The only "prior notice" asserted by the Plaintiffs regarding these allegedly continuous violations is a single incident, in another case, in which Wright led raids on so-called "head shops". According to the Plaintiffs, during the course of the raids, "constitutionally protected free speech material" was seized and never returned. (Doc. 200 at 18). Assuming again that this seizure actually occurred in the manner described by the Plaintiffs, it does not in any way support the notion that Orlando had a custom of allowing officers to violate arrestees' right to a fair trial, or of making statements without the Chief's approval, or posing people for photographing by the media. As such, it would not support the argument that the City had a custom of permitting this alleged misbehavior by OPD officers or of deliberately failing to train or supervise its officers to behave properly in these areas.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 127) filed by the City of Orlando is **GRANTED IN PART AND DENIED IN PART**, as follows. To the extent the motion sought judgment as to the claims of Stan Loomis and Tony Palladino based on their refusal

to participate in discovery, the motion is **DENIED**. In all other respects, the motion is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 4, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party